# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriela Enriquez,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV 07-338-TUC-CKJ (CRP)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). This case presents four issues on appeal: (1) whether the Administrative Law Judge ("ALJ") improperly addressed Plaintiff's credibility even though she found Plaintiff not severely impaired under step two of the disability analysis; (2) whether the ALJ improperly evaluated the opinion of testifying medical expert Dr. Toomajian; (3) whether the ALJ erroneously rejected the retrospective opinion of treating rheumatologist Dr. Smith; and (4) whether substantial evidence in the record supports the ALJ's finding that Plaintiff was not credible. Based on the pleadings of the parties and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, DENY

Plaintiff's Motion for Summary Judgment (Doc 12) and GRANT Defendant's Cross-Motion for Summary Judgment (Doc 15). The record establishes Plaintiff did not have a severe impairment on December 31, 1999, the date she was last insured.

## **Procedural History**

Plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") on February 25, 2002, alleging disability since December 31, 1999, due to systemic lupus erythematosus ("lupus"). (Administrative Record ("AR") 77). That application was denied in April 2002 and Plaintiff did not seek review of that decision. (AR 45). Plaintiff filed a second application for DIB in August 2003, alleging the same disability. (AR 80). This application was also denied because Plaintiff was not disabled by lupus prior to December 31, 1999, the date she was last insured. (AR 49). Plaintiff appealed the decision and a hearing was held before ALJ Lauren R. Mathon on March 11, 2005. (AR 55, 58, 598).

At the hearing, the ALJ focused on whether Plaintiff was severely impaired from lupus prior to her date of last insured ("DLI"). Plaintiff represented herself and testified she began suffering from lupus symptoms around the birth of her second child in 1995. (AR 598). Dr. Armen Toomajian, a retired rheumatologist, testified Plaintiff was not severely impaired from lupus prior to December 31, 1999. (AR 598-609). After the hearing, Plaintiff retained the attorney representing her in this pending appeal. (AR 70). On September 8, 2005, the ALJ denied Plaintiff's appeal, finding she was not disabled with a severe impairment on her date of last insured as required by 20 C.F.R. § 404.1520(c). (AR 28-29).

Plaintiff then requested review by the Appeals Council and submitted a memorandum alleging errors by the ALJ in the administrative hearing. Plaintiff also submitted a copy of the transcript from the administrative hearing as well as a letter from Dr. Karen Smith, Plaintiff's treating rheumatologist. (AR 18, 572-597). In the letter, Dr. Smith disagreed with Dr. Toomajian's assessment of Plaintiff's condition and opined Plaintiff was disabled from lupus prior to her DLI. (AR 18). On June 22, 2007, the Appeals Council denied Plaintiff's appeal making the ALJ's decision the Commissioner's final decision. (AR 7). 20 C.F.R. § 422.210(a).

Plaintiff timely filed the pending case in this Court requesting judicial review of the Commissioner's final decision. (Doc 1).

## **Factual History**

Plaintiff was born on March 24, 1962, making her 41 years of age at the time she filed her second application for DIB in August 2003. (AR 80). Plaintiff had four years of college education and appears to have graduated in December 1985, although the record is unclear on the details of her education. (AR 135). From February 1986 through April 1992, Plaintiff consistently worked in clerical jobs with increasingly higher rates of pay. (AR 130). In April 1992, Plaintiff gave birth to a child and did not return to work until two years later in May 1994. (AR 383, 130, 113). From May 1994 through June 1995, Plaintiff continued working as an administrative assistant. In June 1995 Plaintiff gave birth to her son. (AR 130, 113, 192). After her second child, Plaintiff worked for a month between October and November 2000 as a retail cashier. (AR 130). Plaintiff has not worked subsequent to that last position.

Plaintiff was tested for lupus in December 2000 and was diagnosed in that month or the following month, January 2001. (AR 170, 121). Plaintiff's uncontested DLI is December 31, 1999. (AR 28). Since Plaintiff first began applying for DIB in 2002, Plaintiff's medical records pre-dating her DLI have been at issue. Plaintiff's first DIB claim was denied because her medical records pre-dating December 1999 were insufficient to assess her condition. (AR 45). The ALJ denied Plaintiff's second application because the medical evidence in the record pre-dating December 31, 1999 did not support a finding that Plaintiff was severely impaired from lupus prior to her DLI. In her Motion for Summary Judgment in this case, Plaintiff argues an inability to afford healthcare resulted in insufficient medical records for the time prior to December 31, 1999. (Doc 12, p 15).

Reviewing the administrative record, there are 27 sets of medical records. Medical records listed as exhibits 1F-11F were available at the administrative hearing. (Doc 12, p 10). Plaintiff's attorney later submitted the medical records listed as exhibits 12F-27F. (Doc 12, p 10). Both sets of records contain medical evidence pre-dating Plaintiff's DLI.

(*See* AR 3-5, List of Exhibits).  Thus, the ALJ reviewed medical records pre-dating Plaintiff's DLI prior to issuing her decision.  The medical records pre-dating Plaintiff's DLI of December 31, 1999 are summarized in the following paragraphs.

During an annual gynecological exam in July 1997, Plaintiff was asked to evaluate her present health.  (AR 212).  Plaintiff denied problems with energy and while she checked "yes" on the form for headaches, she provided no further description.  (AR 212).  On a Physician Report dated March 1999, Plaintiff denied any problems with energy or headaches.  (AR 206).  During what appears to be a transition between California and Tucson, Plaintiff called Dr. Susan Dickson's office in September 1999 requesting Westcort ointment for a reoccurring rash on her side.  (AR 536).  In the message she left for Dr. Dickson, Plaintiff explained she usually filled the prescription for the ointment in California but she was having problems filling it in Tucson.  (AR 536).

The most significant medical record pre-dating Plaintiff's DLI is a two-page medical history form Plaintiff completed at her first appointment with Dr. Dickson in December 1999.  (AR 324-325).  When asked to list symptoms, Plaintiff wrote only GIRD and anxiety.  (AR 324).  The form also asked Plaintiff to identify whether she was currently experiencing or had experienced in the past year any of eighty-five symptoms.  (AR 325).  Plaintiff circled "yes" to sinus infections in the past year and she circled "yes" to "tingling or weakness of hands or feet" and wrote beside that question "has happened."  (AR 325).  Plaintiff then denied currently experiencing or having experienced in the past year other symptoms associated with lupus.  Plaintiff denied any problems in the past year with frequent or severe headaches.  (AR 325).  While Plaintiff stated she wore glasses, she denied any vision problems, including circling "no" to "blurred vision," "double vision," "spots before eyes," "infected eyes," "pain behind eyes," or "any change in vision."  (AR 325).  Plaintiff also denied having any "pain in arms," "joint pains," "swelling of any joints," redness or heat of any joint," or "loss of sensation of hands or feet."  (AR 325).  Finally, Plaintiff denied having any "tiredness without apparent reason," presently or in the past year.  (AR 325).

Subsequent to December 1999, Plaintiff began complaining consistently of lupus symptoms, but as the medical evidence shows the earliest Plaintiff dates experiencing such symptoms is summer 2000. In September 2000, Plaintiff described hand and arm numbness that had been present "for several weeks." (AR 321). In February 2001 at an appointment with rheumatologist Dr. Jeffrey Loomer, Plaintiff described episodes of swelling in her hands that had been going on "for the past several weeks." (AR 303). In May 2001, rheumatologist Dr. Smith noted Plaintiff reported symptoms since August 2000 that included "swelling of her hands, rash, [and] fatigue." (AR 364).

During these doctor's visits in 2000 and 2001, Plaintiff presented to doctors as someone in good health with few clinical results symptomatic for lupus. The neurologist, Dr. Harry Buchsbaum, who examined Plaintiff in September 2000, described her as "a healthy looking female" with "good muscle strength in all four including intrinsics of her hand"who "uses a computer quite frequently." (AR 317). Plaintiff complained of "joint problems and paresthesias in her hands" but had "a negative exam and negative electrical studies." (AR 317). When rheumatologist Dr. Loomer examined Plaintiff in February 2001, he observed a "female who appeared quite healthy." (AR 304). Dr. Loomer noted "no evidence of alopecia, [Plaintiff] had a negative hair pull sign, and there were no oral or nasal lesions." (AR 304). Dr. Loomer also noted Plaintiff had "no history of photosensitive rash, seizure disorder, alopecia, sicca symptoms, oral or nasal lesions, fetal wastage, deep venous thrombosis, pulmonary embolism, or pleuropericarditis" and that Plaintiff "does not experience Raynaud's or dysphagia." (AR 303). When Plaintiff saw rheumatologist Dr. Smith in May 2001, Dr. Smith noted Plaintiff saw a neurologist because of the numbness and that a nerve conduction test result was normal. (AR 364).

In addition to the medical records, the ALJ heard Plaintiff's testimony and reviewed a letter submitted by Plaintiff's husband regarding the onset of Plaintiff's lupus. Plaintiff and her husband allege she experienced a severe impairment due to lupus that began during and subsequent to the pregnancy of her second child in June 1995. (AR 192). Plaintiff states she has not worked since 1995 because of fatigue, swelling, numbness, pain, headaches, a

compromised immune system and impaired eyesight. (AR 128). In her first application for DIB, Plaintiff stated her symptoms were almost continuous, although when asked what brings on her symptoms she stated "Lupus flareups" and described the symptoms as varying in severity from day to day. (AR 111). In September 2003, Plaintiff completed a Headache Questionnaire for the Social Security Administration. (AR 168). On the form, Plaintiff described having daily headaches since 1995 after the birth of her son. (AR 168). In January 2004, Plaintiff completed an Activities of Daily Living Questionnaire in which she described caring for her son, doing a load of laundry a day, making a light lunch, buying small items at the grocery store, but needing to rest frequently. (AR 177-178).

Plaintiff's husband describes Plaintiff's symptoms during her pregnancy as "persistent weakness, aches, fevers, chills and a fatigue that was out of proportion to the normal fatigue of pregnancy." (AR 192). Plaintiff's husband states he took a sales and marketing job so he would have more flexibility to help his wife take care of their two children. (AR 192). He also states that his wife intended to continue working after a three to six month period of staying home with their second child but that her symptoms made day to day activities impossible. (AR 192).

Two doctors have spear-headed Plaintiff's healthcare since Plaintiff moved to Tucson. Dr. Dickson, an internist, first began seeing Plaintiff in 1999. In March 2002, Dr. Dickson wrote the Arizona Department of Economic Security ("DES") to describe Plaintiff's condition. (AR 121). Dr. Dickson stated Plaintiff first presented to her in December 1999 with nonspecific symptoms of fatigue, decreased concentration, arthralgias, joint swelling, and submandibular pain. (AR 121). As previously summarized in the review of Plaintiff's medical records, Plaintiff did not complain of any of these symptoms when she visited Dr. Dickson in December 1999 and completed the medical history form. (AR 324-325). In her letter to DES, Dr. Dickson also notes Plaintiff's symptoms "continued to flare and remit until she was diagnosed in December or January 2000/2001." (AR 121). As of March 2002, Dr. Dickson described Plaintiff's condition as "improved," although "she continues to have flares of her disease." (AR 121).

- 6 -

1    Dr. Smith, Plaintiff's treating rheumatologist, opines Plaintiff was disabled by her
2 lupus prior to December 31, 1999.  Dr. Smith sent three letters explaining her opinion.  (AR
3 170, 537, 576-577).  In the first letter sent to the Social Security Administration, Dr. Smith
4 concluded Plaintiff "became permanently disabled by lupus prior to December 1999" based
5 on Plaintiff's verbal history to Dr. Smith that she began experiencing inexplicable fatigue,
6 numbness in her arms and hands, headaches, and the inability to fight off common illnesses
7 after the birth of her second child.  (AR 170).  In a second letter, Dr. Smith stated she would
8 date Plaintiff's symptoms back to Plaintiff's pregnancy in 1995 based on Plaintiff's
9 "historical complaints and what little information is in the chart."  (AR 537).  Dr. Smith also
10 pointed out that diagnosing lupus can be difficult "and the patient often has symptomatic
11 clinical disease for anywhere from 5-8 years before they are actually seen by a
12 rheumatologist and appropriate diagnosis."  (AR 537).
13    Subsequent to the administrative hearing, Dr. Smith sent a third letter in April 2006
14 again opining Plaintiff suffered from debilitating lupus prior to December 1999.  (AR 576-
15 577).  Dr. Smith suggested the lack of contemporaneous medical evidence to support her
16 conclusion resulted from Plaintiff lacking medical insurance during some period prior to
17 December 1999.  (AR 576).  In this letter, Dr. Smith also opined Plaintiff was not
18 malingering and that Plaintiff was currently in an experimental study at the University of
19 Arizona to treat her lupus.  (AR 576).  Dr. Smith also stated she disagreed with the opinion
20 of expert witness Dr. Toomajian regarding the effect of Plaintiff's pregnancy on her lupus.
21 Dr. Smith stated in her clinical experience "patients very often become symptomatic after
22 pregnancy."  (AR 577).  A review of the transcript shows both Drs. Smith and Toomajian
23 believe patients become more symptomatic after pregnancy.  (AR 577, 607).
24    Since the diagnosis of lupus in December 2000 or January 2001, medical evidence
25 shows Plaintiff suffers from lupus that flares and remits.  After her appointment with
26 Plaintiff in May 2001, Dr. Smith wrote Dr. Dickson to summarize her opinion.  (AR 364).
27 Dr. Smith stated Plaintiff "has not had persistent symptoms.  It kind of comes and goes over
28 a month or two."  (AR 364).  Dr. Smith did note Plaintiff had swelling of her hands, rash,

- 7 -

1  and fatigue that had been present since August 2000. (AR 364). In August 2001, Dr. Smith
2  had a follow-up with Plaintiff and stated Plaintiff "overall feels very good." (AR 360). In
3  November 2001, Dr. Smith described Plaintiff as "improving." (AR 358). Then in February
4  2002, Dr. Smith in a letter to Dr. Dickson, described Plaintiff as having "lots of problems"
5  including poor quality sleep, fatigue, eye pain, rash, and swelling and stiffness in the hands.
6  (AR 354). In early 2003, Plaintiff suffered lupus uveitis in her right eye. (AR 261-267).
7  She was treated with aggressive immunosuppressive therapy for her lupus and her eye
8  improved. (AR 267, 262). In October 2004, Plaintiff told Dr. Smith she broke her ankle
9  while walking her dog. (AR 543). At that time, Plaintiff was having headaches and dry
10 eyes and mouth. (AR 543). Although, her synovitis was under control without any rash or
11 oral ulcers and the Raynaud's that she had gotten had resolved under the study drug she was
12 taking. (AR 543). In July 2004, Plaintiff presented to Dr. Smith in good condition. (AR
13 545). Plaintiff told Dr. Smith she was well until two or three weeks prior when she
14 "developed a flare with mild headache and mild stiffness, but . . . not bad enough to do
15 anything." (AR 545). Dr. Smith noted in that visit that Plaintiff "does not appear to be
16 terribly uncomfortable from her headaches." (AR 545). In March 2005, Plaintiff saw Dr.
17 Smith who noted Plaintiff had recurrent sores in her mouth, mild to moderate synovitis and
18 looked very tired. (AR 539).

19      At the administrative hearing, Dr. Toomajian, a retired rheumatologist who practiced
20 in the field for 35 years, testified as to the onset of Plaintiff's lupus, its severity, and whether
21 Plaintiff was severely impaired from lupus prior to her DLI. (AR 602-609). Dr. Toomajian
22 stated the earliest record he reviewed dated back to December 2000. (AR 603). Based on
23 the evidence he reviewed, Dr. Toomajian opined Plaintiff did not have a severe impairment
24 as of December 31, 1999. (AR 605). Dr. Toomajian also testified that at the time of the
25 administrative hearing in March 2005, Plaintiff's lupus was stable on the drugs she was
26 prescribed and that as of March 2005 Plaintiff did not meet the impairment listing for
27 debilitating lupus in 14.02 of the social security guidelines. (AR 603-604). *See* 20 C.F.R.
28 Pt. 404, Subpt. P, App. 1, 14.02.

1  Dr. Toomajian did testify Plaintiff had restrictions at the time of the hearing based on
2  the medical source statement from Dr. Smith. (AR 327-328). Dr. Toomajian testified
3  Plaintiff was limited to lift occasionally ten pounds, stand or walk for less than two hours
4  out of eight hours with only 30 minutes at one time, and sit six out of eight hours a day.
5  (AR 604). Plaintiff also had postural limitations including only occasionally climbing a
6  ladder and using balance. (AR 604-605).

7  After the hearing, the ALJ permitted Plaintiff to submit additional medical records
8  and a memorandum from her attorney. Then on September 8, 2005, the ALJ denied
9  Plaintiff's DIB claim. The ALJ found Plaintiff did not have a severe medically
10 determinable impairment through December 31, 1999. Since that was her DLI, Plaintiff was
11 determined not disabled at step two of the disability evaluation.

## **Standard of Review**

13 The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. §§
14 404.1520, 416.920; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). The
15 Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe
16 impairment; (3) has an impairment that meets or equals the requirements of a listed
17 impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she
18 can perform other work. *Id.* If the Commissioner conclusively finds the claimant "disabled"
19 or "not disabled" at any point in the five-step process, he does not proceed to the next step.
20 *Id.*

21 Claimant in this case was denied at step two of the evaluation process. Step two
22 requires a determination of whether the claimant has a "medically severe impairment or
23 combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a
24 determination at step two, the ALJ uses medical evidence to consider whether the claimant's
25 impairment more than minimally limits or restricts his or her "physical or mental ability to
26 do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim
27 is denied. 20 C.F.R. § 404.1521(a); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996).

Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).

The findings of the Commissioner are meant to be conclusive.  42 U.S.C. §§ 405(g), 1383(c)(3).  The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.2001).  As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ."  Substantial evidence is "more than a scintilla but less than a preponderance."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999).  "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."  *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992).  The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence.  *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998).  When applying the substantial evidence standard  the court should not mechanically accept the Commissioner's findings but should review the record critically and thoroughly.   Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion.  *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975).

In this case, Plaintiff alleges the ALJ erred by (1) addressing her credibility even though the ALJ found Plaintiff was not severely impaired; (2) improperly evaluating the opinion of the testifying medical expert Dr. Toomajian; (3) rejecting the retrospective opinion of treating rheumatologist Dr. Smith; and (4) finding Plaintiff was not credible regarding her symptoms prior to December 31, 1999.

- 10 -

**The ALJ Did Not Err Addressing Plaintiff's Credibility and Finding Her Not Credible**

In her decision, the ALJ first found Plaintiff did not have a severe, medically determinable impairment through December 31, 1999 and therefore Plaintiff was not disabled at step two in the disability evaluation. The ALJ then further found Plaintiff's testimony about her symptoms prior to December 31, 1999 was not credible because it was not supported by substantial evidence in the record. Plaintiff alleges the ALJ's determination that Plaintiff was not severely impaired and also not credible about symptoms prior to December 31, 1999 are incompatible conclusions and therefore error.

An ALJ reaches the issue of a claimant's credibility when "medical signs or laboratory findings" show that a claimant has "a medically determinable impairment(s) that could reasonably be expected to produce [] symptoms . . ." 20 C.F.R. § 404.1529(c) (2007); SSR 96-7. The ALJ in this case found Plaintiff did not have a medically determinable impairment prior to December 31, 1999.

The ALJ's finding is supported by substantial evidence in the record. An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities for a least a consecutive twelve month period. *See* 20 C.F.R. § 404.1520(a)(4)(ii); Social Security Ruling ("SSR") 96-3p, 61 Fed.Reg. 34,468, 34,469 (1996). An impairment is "not severe" if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a) (2007); *see Bowen v. Yuckert*, 482 U.S. 137, 138 (1987). Basic work activities refer to the abilities and aptitudes necessary to do most jobs. 20 C.F.R. §§ 404.1521(b), 416.921(b) (2007). Furthermore, SSR 85-28 states that "[a]n impairment is not severe if it has no more than a minimal effect on an individual's physical and mental abilities to perform basic work activities." To receive disability insurance benefits under Title II of the Social Security Act, a claimant has the burden to show she was disabled prior to her DLI. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.1998). Additionally, claimants who apply for Title II benefits after their DLI must show that the disability has existed continuously since some time on or before their DLI, and that

the disability lasted for at least twelve consecutive months. *Flaten v. Secretary of HHS*, 44 F.3d 1453, 1462-1463 (9th Cir.1995).

The substantial evidence in the record supports the ALJ's determination that Plaintiff was not disabled prior to her DLI. Plaintiff alleges she began suffering from symptoms of lupus after her second child was born in June 1995. The medical record provides little evidence supporting this contention. Plaintiff and Plaintiff's treating rheumatologist Dr. Smith argue there is no evidence because Plaintiff lacked health insurance and therefore did not seek medical treatment. This argument does not withstand scrutiny because the administrative record does contain medical records prior to December 1999 in which Plaintiff had opportunity but did not complain of lupus symptoms. For instance, in July 1997 during an annual exam Plaintiff was asked to evaluate her present health. Plaintiff denied any problems with energy and while she checked "yes" on the form for headaches, she provided no further description. A few years later in March 1999 Plaintiff denied problems with both energy and headaches. Plaintiff did have a reoccurring skin rash in September 1999 but this rash did not appear to be debilitating.

Most significant to this Court and relied upon by the ALJ is the medical record of Plaintiff's first visit with Dr. Dickson in early December 1999. During that visit Plaintiff completed an extensive medical history form. When asked to list symptoms, Plaintiff listed only two, GIRD and anxiety. (AR 324). Neither of these symptoms is commonly related to lupus. The form also asked Plaintiff to identify whether she was currently experiencing or had experienced any of eighty-five symptoms in the past year. (AR 325). Plaintiff circled "yes" to sinus infections in the past year and she circled "yes" to "tingling or weakness of hands or feet" and wrote beside that question "has happened." (AR 325). Other than stating tingling or weakness of hands or feet had happened, Plaintiff denied all other symptoms associated with lupus. Plaintiff denied any problems in the past year with frequent or severe headaches. (AR 325). While Plaintiff stated she wore glasses, she denied any vision problems, including circling "no" to "blurred vision," "double vision," "spots before eyes," "infected eyes," "pain behind eyes," or "any change in vision." (AR 325). Plaintiff also

1  denied having any "pain in arms," "joint pains," "swelling of any joints," redness or heat of
2  any joint," or "loss of sensation of hands or feet." (AR 325). Finally, Plaintiff denied
3  having any "tiredness without apparent reason," presently or in the past year. (AR 325).

4  Furthermore, when Plaintiff began seeing doctors with symptoms of lupus in 2000
5  and 2001, she described those symptoms as being present only within the past few months.
6  In September 2000, Plaintiff described hand and arm numbness that had been present "for
7  several weeks." (AR 321). In February 2001 at an appointment with rheumatologist Dr.
8  Loomer, Plaintiff described episodes of swelling in her hands that had been going on "for
9  the past several weeks." (AR 303). In May 2001, rheumatologist Dr. Smith noted Plaintiff
10 reported symptoms since August 2000. (AR 364). After reviewing the medical records, it is
11 apparent Plaintiff sought medical treatment prior to her DLI but did not describe a severe
12 impairment due to lupus symptoms. The ALJ correctly concluded substantial evidence in
13 the record showed Plaintiff was not severely impaired prior to her DLI.

14 Because the ALJ properly concluded Plaintiff was not severely impaired, the ALJ in
15 this case unnecessarily addressed Plaintiff's credibility. Plaintiff alleges this was error by
16 the ALJ but Plaintiff does not offer statutory or case law authority to support her argument.
17 Based on substantial evidence in the record, the ALJ found Plaintiff was not disabled on her
18 DLI. The ALJ's finding that Plaintiff was not credible in her symptoms does not change the
19 finding that Plaintiff was not disabled. The Court does not find that these decisions by the
20 ALJ are incompatible.

21 Plaintiff further argues the ALJ erred in finding Plaintiff was not credible regarding
22 the symptoms she experienced prior to December 1999. Plaintiff's credibility is not at issue
23 because the ALJ found Plaintiff did not have a severe impairment on her DLI. Furthermore,
24 substantial evidence in the record shows Plaintiff was not complaining of lupus symptoms
25 that severely impaired her prior to December 31, 1999.

26 Plaintiff alleges she experienced lupus symptoms since the pregnancy of her second
27 child in June 1995 and that she has not worked as a result of those symptoms which include
28 fatigue, swelling, numbness, pain, headaches, compromised immune system and impaired

- 13 -

1  eyesight. While this is Plaintiff's subjective position, the medical evidence does not support
2  this position. All the medical records prior to December 31, 1999 as well as medical records
3  from 2000 and 2001 show Plaintiff not complaining of lupus symptoms and not being
4  bothered by any symptoms that debilitated her prior to December 31, 1999. Plaintiff had the
5  burden of showing she was disabled prior to her DLI. Plaintiff has not met that burden and
6  the substantial evidence in the record supports the ALJ's finding.

**The ALJ's Evaluation of Dr. Toomajian's Testimony Was Harmless Error**

8  At the hearing, Dr. Toomajian, a retired rheumatologist who had reviewed Plaintiff's
9  record, testified that Plaintiff was not disabled by lupus prior to her DLI. Plaintiff contests
10  Dr. Toomajian's opinion and the weight it was given by the ALJ. In summary, Plaintiff
11  alleges Dr. Toomajian's opinion was improperly given "controlling weight", Dr. Toomajian
12  did not review medical records prior to December 2000, Dr. Toomajian did not consider
13  medical records submitted after the administrative hearing and Dr. Toomajian
14  misunderstood the effect of pregnancy on symptoms of lupus.

15  An ALJ must "consider all evidence from nonexamining sources to be opinion
16  evidence." 20 C.F.R. § 404.1527(f). An ALJ "may not ignore these opinions and must
17  explain the weight given to these opinions in their decisions." SSR 96-6p. "Opinions of a
18  nonexamining, testifying medical advisor may serve as substantial evidence when they are
19  supported by other evidence in the record and are consistent with it." *Morgan v.*
20  *Commissioner of Social Security Administration*, 169 F.3d 595, 600 (9th Cir.1999), *quoting*
21  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995).

22  Dr. Toomajian's opinion that Plaintiff was not disabled as of her DLI is supported by
23  substantial evidence in the record and the ALJ offered detailed explanation for accepting Dr.
24  Toomajian's opinion. Important to the ALJ were Plaintiff's medical records pre-dating
25  December 31, 1999 because they showed Plaintiff did not complain of debilitating lupus
26  symptoms prior to her DLI. The ALJ noted Plaintiff complained of headaches in July 1997
27  but did not complain of problems with energy. The ALJ also noted Plaintiff's denial of
28  problems with energy and headaches in March 1999. Finally, the ALJ summarized

Plaintiff's first meeting with Dr. Dickson in early December 1999. At that appointment, Plaintiff listed only GIRD and anxiety as symptoms. Plaintiff further denied currently experiencing or having experienced in the past year multiple symptoms associated with lupus, including headaches, eye problems, joint problems, problems with sensation in hands or feet, or energy issues. Furthermore, when Plaintiff began seeing doctors for treatment of lupus, she described experiencing lupus symptoms since August 2000. This substantial evidence in the record supports Dr. Toomajian's conclusion that Plaintiff was not disabled on her DLI.

While Dr. Toomajian's testimony regarding lupus generally and the onset of Plaintiff's lupus specifically is supported by substantial evidence, there are two issues with his testimony. First, Dr. Toomajian did not review any records dated before December 2000. At the administrative hearing, Dr. Toomajian told the ALJ that the medical records he had dated back only as far as December 2000. Other records shedding light on Plaintiff's health prior to December 2000 existed in the record and should have been reviewed. None of these records, however, support Plaintiff's position that she was severely impaired by lupus prior to her DLI. In fact, the medical records prior to December 31, 1999 show Plaintiff was not disabled prior to her DLI.

The second issue is that the ALJ stated she gave Dr. Toomajian's opinion controlling weight. Controlling weight is given to treating sources when the nature and severity of a claimant's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Dr. Toomajian is not a treating physician and therefore his opinion cannot be given controlling weight. His opinion, however, is supported and consistent with other evidence in the record and it can serve as substantial evidence. While it was error to give Dr. Toomajian's opinion controlling weight, it was not error to review the record and determine Dr. Toomajian's opinion was aligned with other substantial evidence in the record.

A reviewing court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006), *quoting Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir.2006). The fact that the ALJ stated she gave Dr. Toomajian's opinion controlling weight did not change the fact that the ALJ's reliance on Dr. Toomajian's testimony over Dr. Smith's testimony was supported by substantial evidence in the record.

### **The ALJ Did Not Err in Rejecting Dr. Smith's Testimony**

Plaintiff alleges it was error to reject the retrospective opinion of Dr. Smith that Plaintiff was disabled before her DLI. In evaluating the opinion of the treating physician, the opinion should be given great deference, but it "is not necessarily conclusive as to either the [claimant's] physical condition or the ultimate issue of disability." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion if she provides specific and legitimate reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). The opinion of a doctor who examines a claimant after the expiration of her disability status is entitled to less weight than the opinion of a doctor who completes a contemporaneous exam. *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir.1996).

In this case the ALJ declined to give controlling weight to Dr. Smith's retrospective opinion that Plaintiff was disabled prior to December 31, 1999. The ALJ gave specific and legitimate reasons for rejecting Dr. Smith's opinion. Primarily, the opinion was inconsistent with the symptoms described in Plaintiff's medical records prior to December 31, 1999. Dr. Smith wrote three letters in which she stated Plaintiff was disabled by her lupus prior to December 31, 1999. Dr. Smith based her retrospective opinion on the subjective statements of Plaintiff who maintains she experienced symptoms since the birth of her second child in 1995. The substantial evidence in the record does not support Plaintiff's position that she experienced disabling symptoms prior to December 31, 1999.

The ALJ summarized Plaintiff's medical history prior to December 31, 1999, showing how Plaintiff had opportunities to complain of lupus symptoms but consistently denied any significant symptoms. The ALJ further pointed out that when Plaintiff began seeing doctors for lupus symptoms in 2000 and 2001, Plaintiff described experiencing lupus symptoms only since August 2000, well after her DLI. The ALJ also noted that Dr. Smith's own notes from May 2001 stated claimant's symptoms had been present only since August 2000. Furthermore, while Dr. Dickson wrote the DES in March 2002 stating Plaintiff presented in December 1999 with nonspecific symptoms of fatigue, decreased concentration, arthralgias, joint swelling, and submandibular pain, the clinical record from that visit does not support that contention. During the visit in December 1999, Plaintiff complained of nervousness. Dr. Smith's assertion that Plaintiff was disabled by lupus prior to December 31, 1999 is not supported by the record. The ALJ did not err in rejecting Dr. Smith's retrospective opinion.

### **Recommendation**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review:

1. Deny Plaintiff's Motion for Summary Judgment (Doc 12);
2. Grant Defendant's Motion for Summary Judgment (Doc 15).

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. If objections are filed, the parties should direct them to the District Court by using the following case number: CV-07-338-TUC-CKJ.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 2nd day of February, 2009.

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 17 -